No. 22-13728

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## TERRY JOYNER

*Plaintiff-Appellant,*

*v.*

## CITY OF ATLANTA, GEORGE TURNER and
## VAN HOBBS, in their individual capacity,

*Defendant(s)-Appellee(s).*

On appeal from the United States District Court
for the Northern District of Georgia
No. 1:16-cv-01780-RDC

## APPELLANT'S OPENING BRIEF

Mario B. Williams
**HDR LLC**
44 Broad Street NW
Suite 200
Atlanta, GA 30303
Tel: (404) 254-0442
mwilliams@hdrattorneys.com

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 28(a) and 11th Circuit Rule 26.1-2(a), the following people and entities have an interest in the outcome of this appeal:

Betts, David, Counsel for Plaintiff/Appellant

Cannon, Regina D., Magistrate Judge

City of Atlanta, Defendant/Appellee

Elarbee, Thompson, Sapp, & Wilson, LLP, Law Firm for Defendants/Appellees

Gignilliat, Richard Read, Counsel for Defendants/Appellees

Glanton, Tracy Lynn, Counsel for Defendants/Appellees

Heisserer, Tess, Counsel for Plaintiff/Appellant

Joyner, Terry, Plaintiff/Appellant

HDR LLC, Law Firm for Plaintiff/Appellant

Palmer, Jody, Defendant/Appellee

Shoreman, John, Counsel for Plaintiff/Appellant

Turner, George, Defendant/Appellee

Thompson-Walker, Linda, Magistrate Judge

Williams, Mario, Counsel for Plaintiff/Appellant


To Appellant's knowledge, no publicly traded company or corporation has an interest in the outcome of the case or appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff-Appellant, Mr. Joyner, requests oral argument to 11th Cir. R. 28-1(c). Oral argument is warranted because novel—and re-occurring issues that need to be addressed—issues are present such as what constitutes direct evidence, should a directed verdict be given on liability and not damages in a Title VII race-discrimination claim, and what constitutes an adverse employment action in a First Amendment retaliation claim, *inter alia*.

# Table of contents

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ..........................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ..................................... i

Table of authorities ..................................................................................iv

JURISDICTIONAL STATEMENT ...................................................1

STATEMENT OF ISSUES ON APPEAL ............................................1

STATEMENT OF THE CASE..........................................................2

   i.   Prior Proceedings & Proceedings Below .........................................2

   ii.   Statement of Facts regarding denial of directed verdict...................4

      A.  Chief Turner's live testimony at trial ..........................................4

      B.  Motion to Amend Pleadings to Assert U.S.C. 1981 Claim............5

      C.  Ruling on Motion to Amend ......................................................7

      D.  Rule 50 Motion for Judgment as a Matter of Law .......................8

      E.  Ruling on the Motion as a Matter of Law ...................................8

      F.  Mr. Joyner's Motion to Admit Additional Code Section under Rule of Completeness ....................................................................................9

      G. Ruling on the Motion to admit Code Under Rule of Completeness .............9

      H.    The district court summary judgment ruling on Joyner whistle blower claim, First Amendment claim, and Title VII retaliation claim.........................10

   iii.   Statement of standard of review for each contention..................10

Summary of Argument .........................................................................12

Argument...........................................................................................14

   I.   This Court should reverse the trial court's denial of Mr. Joyner's Motion for a directed verdict, thereby remanding this claim to be heard on damages only. ......14

      A.  Legal Standard...........................................................................14

      B.  The overwhelming evidence demonstrates that Appellees had an employment practice that was motivated by racial discrimination ..................16

   II.   This Court should reverse the district court's Judgment and order an entire new trial regarding the trial court refusal to submit relevant portions of the City's charter to the jury .....................................................................................19

III.    The court submitted an improper jury instruction to the jury ....................23

IV.    Appellees subjected Joyner to adverse employment action and are not entitled to qualified immunity for First Amendment retaliation .........................25

   A.    Turner and Hobbs retaliated by altering Joyner's schedule privileges to substantially restrict his wages from his extra job and his ability to take care of his children ......................................................................................................27

   B.  The lower court's reliance on incongruous cases, combined with its failure to apply Supreme Court precedent in Burlington, does not support a finding that Appellees are entitled to qualified immunity .............................................32

V.  Joyner is entitled to a jury trial on his Georgia Whistleblower claim.............36

   A. Joyner reported unlawful conduct by Hobbs and Turner, who retaliated by causing Joyner to receive less take-home pay and interfering with Joyner's commitments to his children and ex-wife ..........................................................36

VI.    Joyner is entitled to a jury trial for his Title VII retaliation claims ............37

   A.  Legal standard for retaliation under Title VII.................................................37

   B.  Joyner produced evidence that the City retaliated against him....................38

      i.    The City's retaliates: a pattern of antagonism and a failure to promote ...39

      ii.    A reasonable inference: Turner knew Joyner complained about race.......42

VII.  No lawful reason to deny Mr. Joyner's motion to amend the pleading to conform to the evidence regarding the addition of a Section 1981 race-discrimination case. ..............................................................................................43

CONCLUSION.........................................................................................................44

CERTIFICATE OF COMPLIANCE  ...........................................................46

CERTIFICATE OF SERVICE .........................................................................47

# Table of Authorities

## Cases

A.L. v. Walt Disney Parks & Resorts U.S., Inc., 50 F.4th 1097, 1107 (11th Cir. 2022)...................... 12, 30

Akins v. Fulton Cty., Ga., 420 F.3d 1293, 1304 (11th Cir. 2005).................................................passim

Albers v. Ga. Bd. Of Regents of the Univ. Sys. of Ga., 330 Ga. App. 58, 62-63 (2014)............................36

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) .................15

Ave. CLO, 723 F.3d at 1293 ..........................................................................................................42

Bailey v. Commerce Nat'l Servs., 267 Fed.Appx. 167, 170 (3rd Cir. 2008) ........................................38

Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005)................................................... 26, 32, 35

Brown v. McHugh, No. 1:09-CV-0214-RLV-SSC, 2011 WL 13168836, at *13 (N.D. Ga. Aug. 31, 2011)
    ...................................................................................................................................34

Bryson v. City of Waycross, 888 F.2d 1562, 1566 (11th Cir. 1989)...................................................26

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 69 (2006)........................... 27, 28, 32, 35

Burlington Northern & Sante Fe Railway Co. v. White, 548 U.S. 53, 69 (2006).......................................14

Burton v. City of Belle Glade, 178 F.3d 1175 (11th Cir. 1999)..........................................................11

Canup v. Chipman-Union, Inc., 123 F.3d 1440, 1441-42 (11th Cir. 1997) .............................................16

Celotex, 477 U.S. at 324...............................................................................................................42

Chambless v. Louisiana Pacific Corp., 481 F.3d 1345 (11th Cir. 2007).................................................11

Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192 (11th Cir. 2004) ................... 15, 17, 19

Cooper v. Smith, 89 F.3d 761, 765 (11th Cir. 1996) .......................................................................25

Crawford–El v. Britton, 523 U.S. 574, 588, n. 10, 592 [1998])............................................... 25, 27

Fitzhugh v. Topetzes, No. 1:04- CV-3258-RWS, 2006 WL 2557921, at *6 (N.D. Ga. Sept. 1, 2006) ......34

Forrester v. Ga. Dep't of Human Servs., 708 S.E.2d 660, 665 (Ga. App. 2011) .....................................36

Freeman v. Perdue Farms Inc., 496 Fed.Appx. 920, 926 (11th Cir. 2012). ...........................................38

Gupta v. Florida Bd. of Regents, 212 F.3d 571, 578–79 (11th Cir. 2000))..............................................28

Harbuck v. Teets, 152 F. App'x 846, 847-48 (11th Cir. 2005).............................................. 33, 34

Hartman v. Moore, 547 U.S. 250, 256 (2006) .............................................................................. 25, 27

Jefferson v. Sewon Am., Inc., 891 F.3d 911, 922 (11th Cir. 2018) .....................................................44

McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008) ................................................... 37, 39

McMillian v. Johnson, 88 F.3d 1573, 1584 (11th Cir.1996) aff'd sub nom. McMillian v. Monroe Cnty.,
    Ala., 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)...........................................................41

Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81–82 (1998))..............................................28

Perry v. Sindermann, 408 U.S. 593, 597 (1972) ..........................................................................25

Preis v. Lexington Ins. Co., 279 F. App'x 940, 944 (11th Cir. 2008) .................................................11

Proctor v. Fluor Enterprises, Inc., 494 F.3d 1337, 1347 n.5 (11th Cir. 2007)........................................11

Progressive Emu Inc. v. Nutrition & Fitness Inc., 787 F. App'x 549, 562-63 (11th Cir. 2019)............ 18, 19

Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1242 (11th Cir. 2016) ..........................................passim

Reeves v. C.H. Robinson Worldwide, Inc., 525 F.3d 1139, 1143 (11th Cir. 2008) ...................................11

Rioux v. City of Atlanta, 520 F.3d 1269 (11th Cir. 2008)...................................................................11

Simmons v. Camden Cty. Bd. Of Educ., 757 F.2d 1187, 1189 (11th Cir. 1985)................................. 38, 42

Stanley v. City of Dalton, 219 F. 3d 1280, 1282 (11th Cir. 2000).........................................................42

Sullivan v. Newburgh Enlarged Sch. Dist., 281 F. Supp. 2d 689, 708 (S.D.N.Y. 2003) ..................... 12, 44

Taylor v. Cardiovascular Specialists, P.C., No. 11-4521-TCB-RGV, 2013 U.S. Dist. LEXIS 186090, at
    *97-98 (N.D. Ga. Dec. 11, 2013) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 283-84 (3rd
    Cir. 2000))....................................................................................................................38

Thomas v. Cooper Lighting, 506 F.3d 1361, 1364 (11th Cir. 2007) ....................................................... 36, 37

Tolan v. Cotton, 572 U.S. 650, 660 (2014) ..................................................................................41

U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244, 1250 (11th Cir. 1997)...........16

<u>U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.</u>, 117 F.3d 1244, 1250 (11th Cir. 1997). .......... 16

<u>United States v. Grant</u>, 521 F. App'x 841, 845 (11th Cir. 2013)....................................................... 11

<u>Washington v. Illinois Dep't of Revenue</u>, 420 F.3d 658, 662 (7th Cir. 2005)............................... 28

<u>Watson v. Rozum</u>, 834 F.3d 417, 422 (3d Cir. 2016) ......................................................................... 27

## Statutes

42 U.S.C. § 2000e–2(m) ................................................................................................................ 17, 24

42 U.S.C. § 2000e–5(g)(2)(B) ............................................................................................................ 19

## Rules

<u>Fed. R Civ. P. 59</u> ................................................................................................................................ 23

<u>Fed. R Civ. P. 59.</u> ....................................................................................................................... 23, 25

Fed. R. Civ. P. 50(a)(1)...................................................................................................................... 14

Fed. R. Civ. P. 50(a)(2)...................................................................................................................... 15

Fed. R. Civ. P. 50(b)........................................................................................................................... 15

Fed. R. Evid. 106 ................................................................................................................... 20, 23, 25

<u>Fed. R. Evid.</u> 608 ................................................................................................................................ 41

Rule 56(c)(2)........................................................................................................................................ 40

<u>See</u> <u>Fed. R. Evid.</u> 608 ......................................................................................................................... 41

## JURISDICTIONAL STATEMENT

Jurisdiction is proper in this case involving claims arising under 28 U.S.C. § 1331 and 1342 (a)(4), as well as under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 e et seq), (42 U.S.C. § 1983), 42 U.S.C. § 1981, and the Equal Protection Clause of the U.S. Constitution.

## STATEMENT OF ISSUES ON APPEAL

1) Whether an Appellee's statement that he reserves a certain number of positions for one race to the exclusion of all other cases, and the magistrate judge's admission that race was one factor but there were more factors, constitutes sufficient evidence to grant a motion for directed verdict on Mr. Joyner's Title VII claim as to liability on whether race motivated the subject employment decision?

2) Whether the trial court erred in denying Mr. Joyner's motion to amend the pleading to conform to the evidence at trial in order to add a Section 1981 claim to the trial?

3) Whether the trial court erred in permitting certain sections of the Atlanta City Charter to be reviewed by the jury during its deliberation, while including Mr. Joyner's proffered, requested portions, which were submitted in accordance to the rule of completeness, and also submitted to cure an alleged evidentiary harpoon stated during Appellees' closing argument, that the chief of police's

power to appoint a Captain was the same as the President's authority to nominate a Supreme Court Justice?

4)  Whether the district court erred in holding that under governing First Amendment retaliation precedential law, a change of Mr. Joyner's work schedule that eliminated his additional monetary compensation and impeded his ability to care for his children constituted an adverse employment action?

5)  Whether the causation chain under Mr. Joyner's retaliation claim was sufficiently supported by adequate evidence over a period of time that spanned more than a year?

6)  Whether the district court erred in overruling Mr. Joyner's objections to the first jury instruction read to the jury, which failed to mention any of the legal standards applicable to Mr. Joyner's Title VII and Equal Protection claims?

## <u>STATEMENT OF THE CASE</u>

i.    <u>**Prior Proceedings & Proceedings Below**</u>

On June 1, 2016, Mr. Joyner filed his complaint in the United States District Court for the Northern District of Georgia (ECF 1). On July 20, 2016, Appellees filed their Motion to Dismiss (ECF 7). On January 3, 2017, the Court issued and Order denying Appellees' Motion to Dismiss (ECF 29). On June 26, 2019, Appellees filed a Motion for Summary Judgment (ECF 120). On September 13, 2019, Magistrate Judge recommended that Appellees' Motion for Summary Judgment be

Granted in part and Denied in part (ECF 140). Mr. Joyner timely filed objections to the Magistrate Judge's Final Report and Recommendation on September 27, 2019 (ECF 142). On October 9, 2019, the District Judge entered an Order Adopting and Approving of the Magistrate Judge's Final Report and Recommendation (ECF 144). On October 14, 2021, all parties consented **to the Magistrate Judge conducting all proceedings in this matter (ECF 252). On October 28, 2021, Magistrate Judge Linda Walker recused herself,** and the case was reassigned to Magistrate Judge Regina Cannon (ECF 262).

This case went before a jury trial beginning March 21, 2022 (ECF 301). On March 23, 2022, Judge Cannon denied Mr. Joyner's Motion to Amend Pleadings to add a claim under 42 U.S.C. 1981 (ECF 317-3). On March 25, 2022, Judge Cannon overruled Mr. Joyner's objections regarding the submission of additional; evidence with respect to the Atlanta City Charter (ECF 317-1). The Jury Verdict for Appellees came out on March 25, 2022 (ECF 314). On April 22, 2022, Counsel for Mr. Joyner filed a Rule 50 and 59 Motion to Set Aside Jury Verdict While Entering Judgment As A Matter Of Law and Ordering a New Trial (ECF 317). On October 25, 2022, the district court Denied the Rules 50 and 59 Motion to Set Aside Jury Verdict While Entering Judgment As A Matter Of Law and Ordering a New Trial (ECF 329).

ii.   **Statement of Facts regarding denial of directed verdict**

   **A. Chief Turner's live testimony at trial**

Chief Turner, the decision maker in question, testified at trial about his decision regarding the employment practice of making appointment to the position of captain within Atlanta Field Operation Zones 1-6:

"Q So for a select number of positions, those positions that were occupied, let's say, by an African American captain, a select number, as you testified, you were looking for the most qualified African-American lieutenant to replace the African-American captain; is that true?

A Yes.

Q So my question is: In a select number of cases, a white officer, lieutenant, was excluded from consideration when you were replacing an African-American captain; is that not true?

A Yes, that's true.

Q Okay. And vice versa, if you were replacing a white captain, you were looking for the most qualified white lieutenant?

A That's correct.

Q Therefore, an African-American lieutenant was excluded from consideration in that scenario?

A In that scenario, yes. Q Thank you."

(See ECF 317-2, Trial Tr. Chief Turner, 22:21-23:13 (Mar. 22, 2022)).

Chief Turner further testified to the following about reserving a certain number of positions (no specific zone positions) for a particular race:

"Q Thank you, Chief. And in effecting this policy, effecting this heartfelt desire, you essentially **reserved a certain number of positions** for captain in the zones for African-Americans; is that right?

A Yes.

Q And vice versa, in meeting this desire, this worthy desire, you **reserved a number of captain positions** in Zones 1 through 6, the field zones, for white officers; is that true?

A That is correct."

(See ECF 317-2, Trial Tr. Chief Turner, 24:24-25:8 (Mar. 22, 2022)).

Then, in addition to the above, when questioned specifically about Zone 2—one of the two zones in question in this case—Chief Turner testified to the following:

"Q Zone 2 is an example of one of the zones that were reserved for Black captains; is that true?

A There was a black captain assigned to Zone 2. "Reserved", I refuse to use that term.

Q All right. But it was a -- it was a situation where since there was a black captain in office, he or she was going to be replaced by a well-qualified African-American officer; that's true?

A That's correct.

Q And in effect, that policy**, that practice**, excluded from consideration people of every other race; is that not true?

A For that particular position, yes.

Q For that particular position, yes. Now, Zone 2, did you ever consider -- you never considered -- given that position policy, you never considered Lieutenant Joyner for the position of captain in Zone 2, did you?

A No, I did not."

(See ECF 317-2, Trial Tr. Chief Turner, 27:16-28:8 (Mar. 22, 2022)).

### B. Motion to Amend Pleadings to Assert 42 U.S.C. § 1981 Claim

In moving to amend the pleadings to conform to the evidence, Mr. Joyner argued on record at trial the following:

"MR. WILLIAMS: So at this time, your Honor, I would like to give all

the parties a copy of the testimony and then present the issue of conforming with the pleadings; because the way I read the case law is at every juncture, critical juncture of the trial, we have to have the defense on notice that this is an issue. I believe we did that. We filed a motion prior to the trial. We actually said that, hey, look, this is going to be an issue. And Mr. Knapp stood up and said, okay, I understand I might have to be a little more critical about evidence. So at this time I would like to approach, your Honor, and give your Honor a copy of the transcript. And then also, I brought a copy for my colleagues."

(ECF 317-3, Trial Tr. 3:17-4:4 (Mar. 23, 2022).

Mr. Joyner further argued

"MR. WILLIAMS: Your Honor, I want to -- as you know, I've been pretty adamant about trying to bring this motion. THE COURT: Yes, sir. MR. WILLIAMS: So we're now at that point and that juncture in the proceedings that I can actually bring the motion. I wanted to start off by just reading a quote from Regents of the University of California v. Bakke, 438 U.S. 265. THE COURT: Will you say the cite again? 4 -- MR. WILLIAMS: 438 U.S. 265…

And this motion is in terms of trying to amend the pleadings to conform with the evidence to bring in an Equal Protection Claim and Section 1981 claim…

Now, your Honor is very aware, in the trial pre-conference I said, hey, this is just like this line of cases Bakke and their progeny. You cannot reserve a certain number of seats for a particular race to the exclusion of every other race that doesn't belong to that race. That is absolutely unconstitutional…

Chief Turner came under oath and he testified to exactly what I said, which is new evidence in this case that wasn't formally in his deposition which says, yes, I essentially reserved a certain number of captain positions for a particular race and specifically in Zone 2 I excluded all other races…

It's at the time Chief Turner was making personnel decisions, he reserved in his own mind a certain number of positions for a particular race. And just like he testified about Zone 2, it excluded all other races. And that is a per se constitutional violation that he can't come back from

on rehabilitation on his case in chief. He's only going to impeach himself.

(ECF 317-3, Trial Tr. 6:1-11:15 (Mar. 23, 2022).)

Mr. Joyner argued, in response to Appellees' argument, as follows:

"MR. WILLIAMS: Yes, your Honor. I'll start by saying, my colleague actually pointed to what I just said about this whole replace in one Zone one particular time. The issue is reserving a certain number of seats for a particular race to the exclusion of all the races. That's the issue.

Number 2, as far as implied consent, I'd like to read to you -- I'm sorry, your Honor. I skipped a page. Dawley V. NF Energy Saving Corp. of America, 374 Fed.Appx. 921, 2010. THE COURT: Will you say that again, sir? MR. WILLIAMS: I'm sorry. Dawley V NF Energy Saving Corp. of America, 374 Fed.Appx. 921, 2010, Eleventh Circuit. Not selected for publication, your Honor. I just need to make that very clear to you. THE COURT: Thank you. MR. WILLIAMS: Per curiam, though. I said 2010? Did I tell that, your Honor? THE COURT: You did, yes, sir.

MR. WILLIAMS: "Federal Rule of Civil Procedure 15(b)(2) provides that where issues are tried by express or implied consent of the parties, those issues will be treated as having been raised in the pleadings. Thus a judgment may be based on an unpled issue as long as consent to trial of the issue is evident. The corollary is, of course, that a judgment may not be based on issues not presented in the pleadings and not tried with express or implied consent of the parties. Consent under Rule 15(b) will not be found if the defendant will be prejudiced; that is, if the defendant had no notice of the new issue, if the defendant could have offered additional evidence in defense, or if the defendant in some other way was denied a fair opportunity to defend."

(See ECF 317-3, Trial Tr. 14:12-17:2 (Mar. 23, 2022)).

### C. Ruling on Motion to Amend

After a short recess, the Court came back into session and ruled on the Motion to Amend, thereby denying the request as to the Section 1981 claim, while granting the request as to the Equal Protection claim. (See ECF 317-3, Trial Tr. 18:13-19:16

(Mar. 23, 2022)).

### D. Rule 50 Motion for Judgment as a Matter of Law

Having rested his case in chief, Mr. Joyner next moved for Judgment as a

Matter of Law as follows:, requesting that the court direct verdict as to liability

while permitting the parties to further litigate damages:

> "MR. WILLIAMS: Yes, your Honor. The plaintiff just has one motion. The plaintiff understands they're about to have a chance on the Equal Protection Claim. But on the Title VII claim, your Honor, I would like to move for a directed verdict on liability as far as race being a motivating factor in an employment decision and on a protected characteristic based on the same evidence I entered in this morning about the -- Chief Turner's witness testimony here at trial. I believe that that indisputably demonstrates, when he actually said in Zone 2 that he actually excluded all races. So I believe that it is appropriate for your Honor to entertain a motion for directed verdict on liability.
>
> Now, damages is different. Damages, my understanding of the law is that defendants have an opportunity on damages to bring their same decision defense. So that's an issue that is a damages issue….

(ECF 317-3, Trial Tr. 24:10-25:12, 28:18-30:10  (Mar. 23, 2022.)

### E.  Ruling on the Motion as a Matter of Law

After hearing argument, the Court ruled the following, while acknowledging that

Chief Turner admitted that at least on motivating factor was Terry Joyner's race:

> "appreciate the argument from the parties. I completely disagree with the plaintiff. I agree with the defendant. This is a factual finding. And it's one that a jury has. That's why we're in trial. Rule 50(a)(1) says I must find that a reasonable jury would not have a legally sufficient evidentiary basis to find for the defendant. I just don't see the evidence that clear. Chief Turner **said one thing about reserving a position** and then also clarified that by saying he considered other criteria….

(ECF 317-3, Trial Tr. 30:12-31:3 (Mar. 23, 2022).

### F. Mr. Joyner's Motion to Admit Additional Code Section under Rule of Completeness

During deliberations, the jury requested the City Charter, to better understand the appointment authority of Chief Turner, specifically "Can we see the City of Atlanta Charter that grants authority to Police Chief for appointments?" (See ECF 317-1, Trial Tr. 17:23-25 (Mar. 25, 2022)). In response to the efforts by Appellees to have the section granting appointment authority to Chief Turner, Mr. Joyner moved to admit an additional section of the code that provided limitations on said appointment authority. (See ECF 317-1, Trial Tr. 2:17-4:25 (Mar. 25, 2022.))

### G. Ruling on the Motion to admit Code Under Rule of Completeness

Upon hearing the argument of counsel, the Court ruled:

> "THE COURT: We'll just do this one for right now, so thank you very much. I'm going to overrule the request and deny the request to add this section. I'm not going to provide the jury what has not been introduced into evidence.
>
> What the jurors are asking about is what is part of the stipulated facts that the parties already agreed to and that is in evidence. It's in evidence already. What Ms. White said, it's argument. And I've said multiple times that what lawyers argue is not evidence. So the fact that she made that argument doesn't mean that now we can introduce new evidence, so I will not introduce this.
>
> I will allow the jurors to have the City's Code of Ordinance, as they requested, because that specifically was noted in the stipulated facts and the parties agreed to it, so that will be granted. And we will send that back to them. We'll number that."

(ECF 317-1, Trial Tr. 5:20-6:11 (Mar. 25, 2022)).

The Court then tore off two specific pages of the City Charter and sent those pages back to the jury.

(ECF 317-7, Trial Tr. 22:2-5 (Mar. 25, 2022)).

> After doing so, Mr. Joyner made sure he perfected the record with his objection: "[a]nd on those lines, your Honor – I should have perfected the record earlier. -- we would also like to note our objection to the Court's ruling concerning the entering Division 5 of the ordinance equal opportunity and --
> THE COURT: It is noted. Thank you.

(ECF 317-1, Trial Tr. 16:23-17:3 (Mar. 25, 2022)).

### H. The district courts summary judgment ruling on Joyner's whistleblower claim, First Amendment claim, and Title VII retaliation claim

The lower court reasoned that "The Plaintiff's Title VII retaliation claims fail because he cannot establish a causal connection between his 2008 complaint of racial discrimination and his not being appointed Captain in 2014-2015. His Section 1983 claim and Georgia Whistleblower Act claim fail because he has not shown that he suffered an adverse employment action." (ECF 144, Order.) The factual assertion before this Court at the time of said reasoning are set forth below so as not to waste the court's time with repetition.

### iii. Statement of standard of review for each contention.

Regarding Mr. Joyner's request to reverse the trial Court regarding its denial of his Motion for directed verdict, the standard of review is de novo: "We review a district court's ruling on a judgment as a matter of law under Rule 50 *de novo,* examining the evidence in the light most favorable to the nonmoving party… Judgment as a matter of law is appropriate when a plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." Proctor v. Fluor Enterprises, Inc., 494 F.3d 1337, 1347 n.5

(11th Cir. 2007); Preis v. Lexington Ins. Co., 279 F. App'x 940, 944 (11th Cir. 2008)

The standard of review for the granting of summary judgment regarding Mr. Joyner's First Amendment, Whistleblower, and Title VII claims is *de novo*. This Honorable Court has long held that it "review[s] a district court's grant of summary judgment *de novo*, viewing all evidence in the nonmoving party's favor." Reeves v. C.H. Robinson Worldwide, Inc., 525 F.3d 1139, 1143 (11th Cir. 2008). *See also* Rioux v. City of Atlanta, 520 F.3d 1269 (11th Cir. 2008), Chambless v. Louisiana Pacific Corp., 481 F.3d 1345 (11th Cir. 2007), Burton v. City of Belle Glade, 178 F.3d 1175 (11th Cir. 1999).

Regarding Mr. Joyner's challenge to jury instructions, this Court applies "a deferential standard of review to a trial court's jury instructions." United States v. Grant, 521 F. App'x 841, 845 (11th Cir. 2013). Under this standard, this Court will "only reverse if we are left with a substantial and eradicable doubt as to whether the jury was properly guided in its deliberations." *Id.* However, this Court "reviews jury instructions *de novo* to determine whether they misstated the law or misled the jury to the prejudice of the objecting party." *Id.* "The district court has broad discretion in formulating a jury charge so long as the charge as a whole is a correct statement of the law." *Id*.

Finally, to the extent that Mr. Joyner challenges a finding of fact, this Court reviews "[e]videntiary rulings only for an abuse of discretion." A.L. v. Walt Disney

<u>Parks & Resorts U.S., Inc.</u>, 50 F.4th 1097, 1107 (11th Cir. 2022). Indeed, "[a] district court abuses its discretion if it 'applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous.'" *Id.* Simply put, this Court "[w]ill not overturn an evidentiary ruling unless the moving party proves a substantial prejudicial effect." <u>Id</u>.

### Summary of Argument

Foremost, "[b]ecause Section 1981 is designed to protect "all persons," the Supreme Court has determined that it is applicable to race-based employment discrimination claims brought by plaintiffs of all races, including Caucasians." <u>Sullivan v. Newburgh Enlarged Sch. Dist.</u>, 281 F. Supp. 2d 689, 708 (S.D.N.Y. 2003). Emphatically, this is **not** a "reverse" discrimination case; this is a discrimination case based on race and this policy hurts **all** races because it excludes blacks from high-ranking positions held by whites, and excludes all other (*e.g.*, Asians and Latino) races who are not black or white from those same positions.

That established, Mr. Joyner will show that the Court made reversible error by denying his motion for directed verdict, because, *inter alia*, even the lower court admitted that the Appellee was motivated, at least, in part by race when making appointments, to the rank of Captain and Lieutenant; consequently, there should be a trial on damages. <u>Quigg v. Thomas Cty. Sch. Dist.</u>, 814 F.3d 1227, 1242 (11th Cir.

2016) (reasoning that triable issue could exist on motivating factor conduct but damages be limited by the same decision rule); (see ECF 317-2, Trial Tr. Chief Turner, 22:21-23:13, 24:24-25:8, 27:16-28:8 (Mar. 22, 2022)); (See ECF 317-3, Trial Tr. 30:12-31:3 (Mar. 23, 2022), reasoning, "Chief Turner said one thing about reserving a position and then also clarified that by saying he considered other criteria …." (See ECF 317-3, Trial Tr. 30:12-31:3 [Mar. 23, 2022]).

Second, and somewhat mysteriously so, the lower Court granted Mr. Joyner's Motion to amend the pleadings to conform with the evidence at trial, to add an equal protection claim—while denying his Motion to add a Section 1981 claim. Relevantly, the direct and circumstantial evidence which supported adding an equal protection claim, without question supported adding said Section 1981 claim. (ECF 317-2, Trial Tr. Chief Turner, 22:21-23:13, 24:24-25:8, 27:16-28:8; ECF 317-3, Trial Tr. 30:12-31:3.)

Next, lower court erred by ignoring Supreme Court precedent to reason that altering Mr. Joyner's schedule in a manner that knowingly eliminated his ability to (1) earn significant income and (2) care for his children—immediately after he reported illegal ticket fixing—did not constitute an adverse employment action that would sustain his whistle blower claim or his first amendment retaliation claim. (ECF 144, Order Summ. J., reasoning that Mr. Joyner's "Section 1983 claim and Georgia Whistleblower Act claim fail because he has not shown that he suffered an adverse

employment action"); (see also <u>Burlington Northern & Sante Fe Railway Co. v. White</u>, 548 U.S. 53, 69 (2006), reasoning that "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters…," and that "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.")

Finally, the lower court erred in granting summary judgment on Mr. Joyner's Title VII retaliation claim because the evidence, *inter alia*, shows that Appellee, Earnest Finley, maintained authority over Joyner for years, and during that time, Joyner's fast rack promotional escalation stopped.

## <u>Argument</u>

### I.    This Court should reverse the trial court's denial of Mr. Joyner's Motion for a directed verdict, thereby remanding this claim to be heard on damages only

#### A.  Legal Standard

If, after a party is fully heard on an issue during a jury trial, the court finds that a reasonable jury would not have a legally sufficient basis to find for the party on an issue, the court may: "(A) resolve that issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1). A motion for judgment as a matter of law

may be made at any time before the case is submitted to the jury. Fed. R. Civ. P. 50(a)(2). If the court denies a motion under Rule 50(a), it is deemed to have submitted the case to the jury subject to the court's decision on the legal question raised by the motion. Fed. R. Civ. P. 50(b). No later than 28 days after entry of judgment, the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. Id.

A court should enter judgment as a matter of law under Rule 50 when there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party on that issue. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192 (11th Cir. 2004). In ruling on a motion for Judgment as a matter of law, the standard is very similar as for summary judgment; the primary difference is procedural. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). The court must review all evidence in the record and draw all reasonable inferences in the non-moving party's favor. Cleveland, 369 F.3d at 1192-93. The Court **may not** make credibility determination nor weigh the evidence, all evidence favorable to the moving party that the jury is not required to accept must be disregarded. Id. at 1193. The grant of a motion for judgment as a matter of law should be done for the party bearing the burden of proof only when the evidence on the given issue is so one-sided as to be of overwhelming effect. U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244, 1250

(11th Cir. 1997).

Relevantly, in mixed motive cases under Title VII, that the employer would have made the same decision absent the illegal motive may be raised as an affirmative defense. Quigg, 814 F.3d at 1242; 42 U.S.C. § 2000e–5(g)(2)(B). Such defense, however, is a defense as to damages only, not as to liability. *Id.*Where an affirmative defense of same decision is successfully raised, the court may still grant an award of declaratory relief, injunctive relief, and attorney's fees and costs. Canup v. Chipman-Union, Inc., 123 F.3d 1440, 1441-42 (11th Cir. 1997) (noting Congress passed the 1991 Civil Rights Act which altered the effect of a same decision defense from a complete bar to liability to a bar on damages only).

### B. The overwhelming evidence demonstrates that Appellees had an employment practice that was motivated by racial discrimination

To save space and time, so as not repeat lengthy evidence, Mr. Joyner incorporates fully—Statement of Case, subsection (ii) A-E—above, which recites exact testimony that, at trial, Chief George Turner, the undisputed decision maker regarding the employment practice of appointing lieutenants, such as Mr. Joyner, to the position of Captain testified, unambiguously, demonstrates that Chief Turner reserved a certain number of seats for particular races, to the exclusion of all other races, including the position Mr. Joyner was excluded from even being considered because he was white.

Significantly, the above live testimony simply leaves zero question, *i.e.*, provided 'overwhelming' evidence, that the City of Atlanta, through its policy maker and police Chief, had an employment practice of appointing officers that **was motivated by race** in violation of Title VII—mindful that in accordance with the express language of Title VII, race only has to be one motivating factor, not the only motivating factor, to find a violation of Title VII. Quigg, 814 F.3d at 1240; Cleveland, 369 F.3d at 1192-93; 42 U.S.C. § 2000e–2(m) (stating "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, **even though other factors also motivated the practice**"). In fact, that live testimony is "so strong" that it demonstrates that, more than being a motivating factor, race was the **threshold factor (not just the motivating factor)** for being considered for the certain/select number of Captain positions reserved by Turner, for a particular race, to the exclusion of other races. *See* Cleveland, 369 F.3d at 1192-93. Indeed, considering the live testimony "no reasonable persons in the exercise of impartial judgment could not arrive at a contrary verdict," noting that "[Judgment as a matter of law] need not be reserved for situations where there is a complete absence of facts to support a jury verdict…. If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people, in the exercise of impartial judgment, could not arrive at a contrary verdict, then the motion

was properly granted." <u>Progressive Emu Inc. v. Nutrition & Fitness Inc.</u>, 787 F.
App'x 549, 562-63 (11th Cir. 2019).

To escape the reality of Turner's absolute and indisputable live testimony, there
was a repeated and misguided emphasis on whether Turner could show on occasion
he replaced a white officer with a black officer and vice versa, but as the testimony
shows: Turner reserved a "certain number"/"select number" of positions for a
particular race to the exclusion of all other races, as Turner readily admitted he did
with respect to Zone 2, one of the zones **in question in this case**. (*See* Statement of
Case, subsection (ii) A-E.) Moreover, this trial court acknowledged that race was a
motivating factor regarding Chief Turner's reserving certain positions for a certain
race, but refused to grant Joyner's Motion nevertheless: "Chief Turner **said one thing
about reserving a position** and then also clarified that by saying he considered other
criteria …." (*See* ECF 317-3, Trial Tr. 30:12-31:3 (Mar. 23, 2022)). That statement
evidences (1) the trial court's full understanding that Appellee was motivated by
race, as at least one factor ("criteria"), amongst other alleged factors/criteria,
regarding the appointment of Joyner and others to the rank of Captain, and (2) that
there was no credible evidence adduced at trial to establish that Appellee was not
motivated at least in part by race with respect to its employment practice of
appointing officers such as Joyner to the position of Captain. <u>Id.</u>; <u>Progressive Emu</u>

Inc.,787 F. App'x at 562-63; Cleveland, 369 F.3d at 1192-93.

Consequently, the evidence was overwhelming with respect to liability, i.e. race was at least a motivating factor (regardless of other alleged factors) regarding the employment practice at issue. *Id.* Thus, this Court should reverse the lower court, and thereby order a new trial on damages only, with the understanding that the issue of damages is a completely separate issue as a matter of law, according to the Eleventh Circuit Court of Appeals, **as Mr. Joyner stated when he moved the Court for a directed verdict**. See Quigg, 814 F.3d at 1242; 42 U.S.C. § 2000e–5(g)(2)(B); see also ECF 317-3, Trial Tr. 28:18-30:10 (Mar. 23, 2022); This Court should also Order granting a new trial based on violating the rule of completeness.

## II. This Court should reverse the district court's Judgment and order an entire new trial regarding the trial court refusal to submit relevant portions of the City's charter to the jury

To the point, the trial court substantially prejudiced Mr. Joyner by refusing to provide relevant parts of the City Charter upon the Jury's request for the City Charter so it could understand Chief Turner's appointment power. *See* Broaddus v. Fla. Power Corp., 145 F.3d 1283, 1287 (11th Cir. 1998) (holding, in a case where closing arguments misstated the law, where it comes to the court's attention that the jury is confused as to the law, the court is required to clarify that confusion).

By law, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the

same time. Fed. R. Evid. 106. In addition, if a Court undertakes actions with respect to the submission of evidence to a jury that substantially prejudices a party as to the outcome of the trial, then a new trial should be Ordered. Mendez v. Unitrin Direct Prop. & Cas. Ins. Co., 622 F. Supp. 2d 1233, 1238 (M.D. Fla. 2007) (holding that erroneous evidentiary rulings that produce a substantial prejudicial effect warrant a new trial). Furthermore, statements made by a party in closing argument that are highly prejudicial and inflammatory warrant a new trial, or at the very least must be corrected by the Court once such correction is requested by the party, who is highly prejudiced by the closing-argument statements. See Seaberg v. Steak N' Shake Operations, Inc., 697 F. App'x 941, 944 (11th Cir. 2017).

Here, the Jury requested the City Charter to better understand Chief Turner's appointment authority, **despite the jury already** having the stipulated facts which addressed Turner's appointment authority: "Can we see the **City of Atlanta Charter that grants authority** to Police Chief for appointments?") Consequently, the jury's conduct **evidenced confusion** with respect to the scope and nature of Chief Turner's appointment authority, contrary to the lower court's statement that "there is little indication that the jury was led into error." See ECF 329, Order, p. 35; Broaddus, 145 F.3d at 1287 (noting a jury question should have alerted court to jury confusion); (*see also* ECF 317-1, Trial Tr. 17:23-25 (Mar. 25, 2022) (jury question stating, "Can we see the **City of Atlanta Charter that grants authority**

to Police Chief for appointments?") That confusion, as Mr. Joyner's counsel pointed out, reasonably had to do with defense counsel's highly prejudicial and inflammatory tactic of introducing an evidentiary harpoon during closing arguments (See ECF 317-6, Trial Tr. 51:7-18 (Mar. 24, 2022)). Specifically, the City of Atlanta likened Turner's appointment authority as chief of police to that of U.S. Presidents' authority to nominate a Supreme Court Justice, arguing "That is why George H.W. Bush nominated Thurgood Marshall to replace Clarence Thomas on the Supreme Court. First black Supreme Court Justice replaced by a black Supreme Court Justice." *See* Seaberg, 697 F. App'x at 944 (holding improper closing arguments warrant new trial when highly prejudicial, inflammatory, and improper); *see also* Broaddus, 145 F.3d at 1287 (noting a jury question should have alerted the court to jury confusion); ECF 317-6, Trial Tr. 51:7-18 (Mar. 24, 2022). The lower court itself characterized these prejudicial statements as argument that "may have been inappropriate" and that "may have been mistaken." (ECF 329, p. 35, 39.)

That established, because the jury requested the City Charter, and because of the highly prejudicial statements made by Appellee in closing argument, Mr. Joyner's counsel requested that the trial court submit the section of the City Charter (Section 114-166, Division 5, Equal Opportunity and Non-Discrimination) which demonstrates that Chief Turner cannot "discriminate against any person in… appointment… because of race… shall be prohibited," to the jury. Id; (*see also* ECF

317-4, City Charter § 114-166, Division 5, Equal Opportunity and Non-Discrimination.) Mr. Joyner **expressly** made this request pursuant to the rule of completeness, which is grounded in equity, yet also, as a cure for the evidentiary harpoon employed by the Appellee, **when it likened Turner's appointment authority to that of the U.S President's authority**. (See ECF 317-1, Trial Tr. 2:17-4:25 (Mar. 25, 2022.)

In response, the trial court actually selected **two pages from the entire City Charter**, then sent those two pages to the Jury, while refusing to send the section of the City Charter—as requested by Mr. Joyner—which prohibited Turner from using his appointment authority in a manner that discriminated based on race. *Id.* As such, the Court refused to abide by the evidentiary Rule of Completeness and refused to cure the highly prejudicial and inflammatory statement made by Appellee's counsel in closing argument. In this vein, the lower court has conflated issues.

Significantly, the lower court states that "the rule of completeness does not apply, this time because attorney remarks are not evidence." (ECF 329, p. 38.) Mr. Joyner never argued the rule of completeness applies to attorney statements/arguments; rather, Mr. Joyner argued that because the Court was sending back selected Section of the City Charter to the jury pursuant to the Jury request for the portions of the Charter that deal with Chief Turner's appointment authority, Joyner requested that the relevant portion of the charter, which states that Chief

Turner must **not** "discriminate against any person in… appointment… because of race… shall be prohibited" also be sent to the jury. (See ECF 317-1, Trial Tr. 2:17-4:25 (Mar. 25, 2022.)

Next, and without any citation to the record, the lower court repeatedly state that Mr. Joyner stipulated to the cherry-picked section going back to the jury. The record demonstrates otherwise. Specifically, Mr. Joyner thanked the court for allowing him to review and ponder the issue regarding the Jurors' request for the City Charter dealing with the Turner's appointment power—then Joyner objected and as a matter of record the lower court "overrule[d] the request and den[ied] to add this section [the section requested by Mr. Joyner]." (ECF 317-1, 5:22-6:2.)

This Court should use this error to reverse the verdict in this case.

### III.    The court submitted an improper jury instruction to the jury

To make matters worse, the trial correct overruled Mr. Joyner's objection to the trial court's confusing and unlawful first Jury Verdict Form Question, which was completely divorced from the essential question-- regarding liability--of whether the Appellee had an employment practice motivated, at least in part, by race, as a factor amongst other alleged factors. *See* <u>Seaberg</u>, 697 F. App'x at 944; *see also* <u>Broaddus</u>, 145 F.3d at 1287; <u>United States v. Baker</u>, 432 F.3d 1189, 1199-1200 (11th Cir. 2005); ECF 317-6, Trial Tr. 51:7-18 (Mar. 24, 2022); Fed. R. Evid. 106; Fed. R Civ. P. 59.

The verdict form states, "Do you find by a preponderance of the evidence that Appellee the City of Atlanta denied Terry Joyner an appointment to Captain on December 24, 2014?" (*See* ECF 317-5, Jury Verdict Form.) Mr. Joyner objected to this question, noting that the question was completely divorced from controlling law because the question made zero attempt to ascertain, from the jury, the essential answer—regarding liability—of whether the jury believed race played a role/motivating factor in the decision to appoint Joyner to the position of Captain. Quigg, 814 F.3d at 1227; 42 U.S.C. § 2000e–2(m); ECF 317-6, Trial Tr. 2:8-19, 3:7(Mar. 24, 2022).

Indeed, whether the Appellee denied Mr. Joyner an appointment to Captain, if relevant at all (which it is not, as worded) would fall in line with the same decision rule, which as Mr. Joyner noted to the Court is a damages issue that comes after—and only after—liability has been established. In sum, this Court should order a new trial.

In sum, combining the improper jury instruction with the improper argument at closing argument, with the improper and intentional selection of only part of the City Charter while excluding Mr. Joyner's requested part that clearly limits and prohibits Chief Turner's appointment power with respect to discriminating based on race—all of these prejudicial acts formed together in a way that substantially prejudiced Mr. Joyner with the jury. *See* Seaberg, 697 F. App'x at 944; *see also*

Broaddus, 145 F.3d at 1287; Baker, 432 F.3d at 1199-1200; ECF 317-6, Trial Tr.

51:7-18 (Mar. 24, 2022); Fed. R. Evid. 106; Fed. R Civ. P. 59.

### IV. Appellees subjected Joyner to adverse employment action and are not entitled to qualified immunity for First Amendment retaliation

Joyner's evidence reveals Hobbs and Turner retaliated **after** Joyner reported

them to the FBI and the APD's Office of Professional Standards ("OPS") for

intimidating an officer into "fixing tickets." By law, the Supreme Court maintains

that "[o]fficial reprisal for protected speech offends the Constitution because it

threatens to inhibit exercise of the protected right," and "the law is settled that as a

general matter the First Amendment prohibits government officials from subjecting

an individual to retaliatory actions for speaking out." Hartman v. Moore, 547 U.S.

250, 256 (2006); (citing Crawford–El v. Britton, 523 U.S. 574, 588, n. 10, 592

[1998]); Perry v. Sindermann, 408 U.S. 593, 597 (1972). Relevantly, "[t]here can be

no doubt that corruption in a police department *is an issue of public concern*."

Cooper v. Smith, 89 F.3d 761, 765 (11th Cir. 1996) (denying qualified immunity

while characterizing plaintiff, a law enforcement officer, as a whistleblower for

reporting corruption within his department to the Georgia Bureau of Investigation).

That's why "[a] core concern of the First Amendment is the protection of

whistleblowers who report government wrongdoing…. As a result, [Joyner's]

interest in this speech is high." Akins v. Fulton Cty., Ga., 420 F.3d 1293, 1304 (11th

Cir. 2005); *see also* <u>Bryson v. City of Waycross</u>, 888 F.2d 1562, 1566 (11th Cir. 1989).[1]

Moreover, to state a First Amendment retaliation claim, a plaintiff must establish (1) his speech or act was constitutionally protected; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising constitutional rights; and (3) a causal connection. <u>Bennett v. Hendrix</u>, 423 F.3d 1247, 1250 (11th Cir. 2005). Indeed, the right to expose government corruption is one of the most protected forms of conduct under the First Amendment. <u>See</u> <u>Akins</u>, 420 F.3d at 1304.

In this case, Mr. Joyner engaged in protected conduct, based on Joyner's evidence that he reported Hobbs and Turner to the Office of Professional Standards (formerly known as internal affairs), and the FBI for "ticket-fixing," whereby Hobbs and Turner acted to conceal a traffic ticket that had been issued against the grandson of Ambassador Andrew Young, Joyner engaged in protected conduct. <u>See</u> <u>Id</u>; (ECF 131-10, Turner Dep. 57- 60: 62-64; ECF 131-13 Hobbs Dep. 7, 13-24, 59:17-60:1; ECF 131-3 Coxe Dep. 7-10, 14:4-22, 19-24, 32:3-10; ECF 131-6, Joyner Dep. 227, 234:19- 236:25, 242:22-246:9, 251:11-25, 257:8-11).

Next, because "motivation is almost never subject to proof by direct evidence,

---

[1] In their Summary Judgment Motion, Appellees did not dispute that Joyner spoke as a citizen.

[plaintiffs] [usually] rely on circumstantial evidence to prove a retaliatory motive." Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). A plaintiff can satisfy this burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link. *Id.* While "[s]ome official actions adverse to such a speaker might well be unexceptionable if taken on other grounds. . . *when nonretaliatory grounds are in fact insufficient to provoke the adverse consequences*," the Court has repeatedly held that "retaliation is subject to recovery as the but-for cause of official action offending the Constitution." Hartman, 547 U.S. at 256 (citing Crawford–El, 523 U.S. at 593).

### A.  Turner and Hobbs retaliated by altering Joyner's schedule privileges to substantially restrict his wages from his extra job and his ability to take care of his children

With the above established*, and in this case, Turner and Hobbs were on notice—*by way of Supreme Court precedent*—that their actions of **eliminating** Joyner's flextime privileges, decreasing Joyner's total compensation and restricting his ability to fulfill commitments to his young children, constituted adverse employment action. *See*, *e.g.,* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 69 (2006).

By law, to be considered an adverse employment action "in a First Amendment retaliation case, the complained-of action must involve an important condition of

employment." *See* <u>Akins</u>, 420 F.3d at 1300. Important conditions of employment include "discharges, demotions, refusals to hire or promote, and reprimands." *Id.* In addition, "any other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee' qualifies as an adverse employment action." *Id.*(quoting <u>Gupta v. Florida Bd. of Regents</u>, 212 F.3d 571, 578–79 (11th Cir. 2000)).

The U.S. Supreme Court has addressed the contours of adverse employment action in the context of retaliation. In <u>Burlington</u>, the Court wrote, "the significance of any given act of retaliation will often depend upon the particular circumstances. ***Context matters***." <u>Burlington</u>, 548 U.S. at 69 (emphasis added). The Court continued: "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.*(quoting <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 81–82 (1998)). **Precisely on point with Mr. Joyner's case**, the Court stated, "[a] schedule change in an employee's work schedule may make little difference to many workers, *but may matter enormously to a young mother with school-age children*." *Id.*(citing <u>Washington v. Illinois Dep't of Revenue</u>, 420 F.3d 658, 662 (7th Cir. 2005) (finding flex-time schedule critical to employee with disabled child)

(emphasis added).

**First**, and in this case, Turner and Hobbs were aware in October 2015 that Joyner filed a complaint against them to OPS in relation to alleged ticket fixing. (ECF 131-8, Steed Dep. 45:22-25; ECF 131-10, Turner Dep. 62:25-63:4, 63:10-20, 64:8-15, ECF 131-13, Hobbs Dep. 21-24). **Second,** Hobbs admitted that he was "frustrated" that Joyner filed an OPS complaint against him regarding ticket-fixing, and when Steed was asked if it would surprise her that Hobbs put Joyner on a fixed schedule after Joyner filed that OPS complaint, Steed responded "no…[b]ecause [she] recall[s] him being upset about the complaint." (ECF 131-13 Hobbs Dep. 66:1-3, ECF 131-8, Steed Dep. 57:3-11). **Third**, on October 27, 2015, only **seven days after** Joyner reported the alleged ticket-fixing to OPS, Hobbs told Captain Steed to put Joyner on a fixed schedule, taking away his flextime schedule privileges that he had enjoyed *for as long as he had been a Lieutenant*. (ECF 131-8, Steed Dep. 56:16-18, ECF 131-6, Joyner Dep. 259:3-260:11, 267:16- 269:22, ECF 131-13, Hobbs Dep. 28:2-29:10).

**Fourth**, up to October 2015, Joyner worked as a patrol officer for Midtown Blue and "flexed [his] hours as [he] needed to accommodate [his] children and to accommodate [this] extra job." (ECF 131-6, Joyner Dep. 267:21-268:5, 274:11-17). **Fifth**, **according to multiple APD witnesses:** Flextime schedule privileges *have been a part of APD culture for years*, affording officers of at least the rank of

lieutenant **the ability to earn additional money and take care of children** and other family members; and, **taking flex-time hours away conversely takes money away from officers, and complicates their family life**. And—contrary to the findings by the lower court, Mr. Joyner produced evidence that **APD command staff knew this**, at all relevant times. (ECF 131-8, Steed Dep. 51:18-21, 52:9-12, 53:11-22, 61:2-4); (ECF 131-7, Rasmussen Dep. 21:12-22:10); (ECF 131-6, Joyner Dep. 261:20-3, 265:16-266:16); see also A.L. v. Walt Disney Parks, 50 F.4th 1097, 1107 (reasoning that the lower court's finding of facts must be clearly erroneous and substantively prejudicial.)

    **Sixth**, Joyner stated that his supervisors at the time, which included Hobbs, knew that he had to be at his additional job at a certain time in the afternoon when Hobbs placed Joyner on a fixed 10am to 6pm schedule. (Joyner Dep. at 260:8-19 (stating, "I had extra jobs… that I was working, that they knew that I had to be at a certain time in the afternoon. I had to change that.)) In further support of the fact that Hobbs knew that Joyner's livelihood and family life would be affected by removing his flextime privileges, *it is undisputed that Hobbs was Joyner's Major at the time he held this job*, and that is important because *additional jobs had to be approved by a Major*, (ECF 131-7, Rasmussen Dep. 21:12-22:10). And, Joyner had a permit approved by his command staff to work the job (ECF 131-6, Joyner Dep. 271:15-272:11).

**Seventh**, when Hobbs altered Lt. Joyner's schedule privileges by eliminating his flextime, this tremendously reduced the hours Joyner could work his extra job, which he had worked for 12 years at that point, as a uniformed, off-duty Atlanta police officer—*a job he needed to take care of his family*—and he lost wages as a result. (ECF 131-6, Joyner Dep. 260:5-262:3, 265:16-268:5, 271-272, 274:11-17). **Eighth**, when Hobbs altered Joyner's schedule privileges by eliminating his flextime, this materially disrupted Joyner's commitment to pick up his young children from school. (ECF 131-6, Joyner Dep. at 277:3-281:3.) Lt. Joyner's commitment to picking up his children was a personal commitment to his children, and also a legal commitment to his ex-wife through his divorce decree. Id.

The lower court dismissed the adverse actions regarding Joyner's scheduled privileges and notes that the elimination of Joyner's flextime schedule privileges was "not strictly enforced," and that Joyner was permitted to pick up his children from school **two** days per week. (ECF 140, Report and Recommendation, p. 42, n. 8.) True, Joyner was permitted to pick up his children (ages 5 and 9 at the time) on *some* of the days he was expected to pursuant to his divorce decree, but this was **only after** Joyner made it clear that his life was being negatively affected by Hobbs' action of reducing Joyner's flextime privileges. Furthermore, every *other* week, Joyner was expected to pick his children up from school **three** times per

week, not two, and therefore Hobbs' enforcement of the fixed schedule indisputably restricted Joyner's ability to pick up his children. (ECF 131-6, Joyner Dep. 277:3-281:3.)

The fact that Hobbs permitted Joyner to pick up his children from school on *some* of the days that he had previously been permitted does not undercut Joyner's evidence; rather it shows that Hobbs, **with full knowledge** that his actions were taking money out of Joyner's pocket and disrupting Joyner's responsibilities as a father, made the decision to dig in and continue to restrict Joyner's schedule. *Id.*Again, ***context matters***. Burlington, 548 U.S. at 69. A "schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young [parent] with school-age children." *Id.*Simply put, *having your boss and the Chief of Police demand you be paid less and see your children less solely because you reported their unlawful conduct would easily deter someone of ordinary firmness from continuing to exercise his or her First Amendment rights*. See Id.; Bennett, 423 F.3d at 1252.

**B. The lower court's reliance on incongruous cases, combined with its failure to apply Supreme Court precedent in Burlington, does not support a finding that Appellees are entitled to qualified immunity**

While, at the pleading stage, the lower court deemed reduction in flextime as not clearly established adverse action, (ECF 44, Amended Report and Recommendation, p. 16-22.), Mr. Joyner's response to Appellees' motion for

summary judgment demonstrated how their actions materially altered Joyner's privileges of employment. See (ECF 131, Plf's Response, p. 21-24 (citing Akins, 420 F.3d at 1300)). Despite Mr. Joyner's showing, the lower court block quoted the same string of cases in the Summary Judgment R&R as were cited in the Motion to Dismiss R&R to state, as a matter of law, altering flextime cannot be clearly established adverse action. (ECF 140, p. 38.) The problem is that the cases cited in R&R, which include an unpublished Eleventh Circuit opinion and three unreported district court cases (one from another circuit), present materially different fact patterns and do not support a finding that Appellees' taking away Joyner's flextime schedule privileges, under these circumstances, cannot be adverse employment action. The reason that these cases do not support that finding is because they deal primarily with employees being ***denied*** flextime schedule privileges—privileges that they did not already have—***as opposed to having their existing flextime schedule privileges altered***. The starting point in analyzing the cases cited in the R&R is, *inter alia*, Akins, which states that any conduct that "***alters*** the employee's compensation, terms, conditions, or privileges of employment . . . is an adverse employment action." Akins, 420 F.3d at 1300 (emphasis added). "***Alters***" is the key word.

In Harbuck v. Teets, 152 F. App'x 846, 847-48 (11th Cir. 2005), the court found that one employee receiving flextime when the plaintiff did not receive

flextime was not sufficient to show adverse employment action. There, the employee's existing schedule privileges were not *altered*, and thus naturally there was *no adverse action*. <u>Id</u>.[2] That is an entirely different situation from Lt. Joyner, who had enjoyed his hard-earned flextime privileges for over eight years at that point and relied on those privileges to work an additional job to provide enough income to support his family, a standard, long-existing practice in the APD, and to pick up his young children from school. (ECF 131-6, Joyner Dep. 259:3-281:3.)

The lower court cites two other cases that state that ***denying*** an employee flextime is not adverse employment action, <u>Brown v. McHugh</u>, No. 1:09-CV-0214-RLV-SSC, 2011 WL 13168836, at *13 (N.D. Ga. Aug. 31, 2011); <u>Fitzhugh v. Topetzes</u>, No. 1:04- CV-3258-RWS, 2006 WL 2557921, at *6 (N.D. Ga. Sept. 1, 2006)—but for the same reason as <u>Harbuck</u>, these cases are off-point. Again, being denied flextime privileges *that one does not already have* is materially different from having one's ***existing*** schedule privileges detrimentally altered. *See* <u>Akins</u>, 420 F.3d at 1300.

Here, Lt. Joyner was not denied a request for flextime—he ***earned*** his flextime privileges when he earned the rank of Lieutenant and exercised those

---

[2] The lower court does not mention that the plaintiff in that case did not even request flextime. <u>See</u> <u>Id</u>. at 848 (stating, "Harbuck admits she never asked for flex time.") But the key point is that the plaintiff in <u>Harbuck</u> did not have the privilege of flextime to begin with.

privileges to receive additional compensation as a uniformed, off-duty police officer—*as he did for 12 years at that point*. (ECF 131-6, Joyner Dep. At 259:3-260:11, 267:16-269:22, 271-72.) After he reported Turner and Hobbs, *these privileges were taken away from him*. For these reasons, this material, detrimental alteration of Joyner's employment privileges was adverse employment action, and accordingly, the R&R's recommendation to grant summary judgment on the First Amendment Retaliation claim was unsound. *See* Burlington, 548 U.S. at 69.

The material disruption in Joyner's commitments as a father aside, *neither the Appellees nor the R & R identified any case law stating that the reduction in compensation must be accomplished by physically reducing the pay provided by the employer*. Indeed, Appellees, by eliminating Joyner's flextime, eliminated his ability to earn money from his second job, reducing his overall compensation. (ECF 131-6, Joyner Dep. 259:3-260:11, 267:16-269:22, 271-72, 274:11-17.)

The lower court ruled that it was clearly established in October 2015 that retaliating against an employee by reducing their compensation was adverse employment action prohibited under the law and *not entitled to qualified immunity*; thus applying the facts correctly to this legal standard, qualified immunity should be denied. (ECF 44, p. 20); Burlington, 548 U.S. at 69; Akins, 420 F.3d at 1301-02; Bennett, 423 F.3d at 1252.

## V. Joyner is entitled to a jury trial on his Georgia Whistleblower claim

Joyner's evidence shows the City retaliated for exposing corrupt activity. Retaliation claims brought pursuant to the Whistleblower Act (the "Act") are evaluated under the McDonnell Douglas analysis used in Title VII retaliation cases. Forrester v. Ga. Dep't of Human Servs., 708 S.E.2d 660, 665 (Ga. App. 2011). The plaintiff must show (1) the defendant-employer falls under the Act's definition of public employer;[3] (2) the employee disclosed a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency; (3) the employee then suffered adverse employment action by the defendant-employer; and (4) there was some causal connection. *Id.* In a whistleblower case, the causation element "is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action *are not completely unrelated*." Albers v. Ga. Bd. Of Regents of the Univ. Sys. of Ga., 330 Ga. App. 58, 62-63 (2014) (emphasis added); Thomas v. Cooper Lighting, 506 F.3d 1361, 1364 (11th Cir. 2007).

### A. Joyner reported unlawful conduct by Hobbs and Turner, who retaliated by causing Joyner to receive less take-home pay and interfering with Joyner's commitments to his children and ex-wife

---

[3] There is no dispute that the City of Atlanta is a public employer under the Act.

Joyner disclosed Hobbs and Turner's ticket-fixing to the FBI and OPS, both government agencies. (ECF 131-13, Hobbs Dep. at 245:13-22, 246:5-9; ECF 131-6, Joyner Dep. 234:19- 236:25, 257:8-11).[4] Mr. Joyner incorporates the same arguments and evidence that he illustrated regarding these Appellees' First Amendment retaliation. *See supra*, Section I (B)-(D). Based on the controlling standard, Mr. Joyner produced evidence that Hobbs and Turner *knew* that Joyner reported them to OPS, and that Joyner's report motivated them to retaliate by eliminating Joyner's flextime privileges which reduced his take-home pay as an Atlanta police officer and disrupted his commitments, both personal and legal, to his children aged 5 and 9, and to his ex-wife. See Thomas, 506 F.3d at 1364. For all the reasons stated above, Mr. Joyner has produced enough evidence to warrant a jury trial on this issue.

## VI.    Joyner is entitled to a jury trial for his Title VII retaliation claims

### A. Legal standard for retaliation under Title VII

Title VII prohibits an employer from retaliating against an employee for opposing an unlawful employment practice. *See* McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008). The plaintiff must show: (1) he engaged in statutorily

---

[4] Contrary to Appellees' framing of the issue, Joyner's OPS complaint was not about an officer *at his own discretion* agreeing to change a ticket to a warning— Joyner's complaint was about Hobbs unlawfully *threatening* Coxe if he did not change the tickets or "take them back." (ECF 131-6, Joyner Dep. 251:7-253:25.)

protected expression; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two events. *Id.* For causation, the plaintiff must show that the decisionmaker was aware of his protected conduct, and that the adverse action was ***not wholly unrelated***. *Id.* A plaintiff may "'rely upon a broad array of evidence' to 'illustrate a "causal link" for the purposes of establishing retaliation.'" Taylor v. Cardiovascular Specialists, P.C., No. 11-4521-TCB-RGV, 2013 U.S. Dist. LEXIS 186090, at *97-98 (N.D. Ga. Dec. 11, 2013) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 283-84 (3rd Cir. 2000)). Therefore, when temporal proximity is lacking, ***causation may be inferred from circumstantial evidence gleaned from the record as a whole***. *Id.* at 98; *see also* Freeman v. Perdue Farms Inc., 496 Fed.Appx. 920, 926 (11th Cir. 2012).

Relevantly, ***a pattern of antagonism*** following the protected conduct is one type of circumstantial evidence that shows a causal connection. *See* Bailey v. Commerce Nat'l Servs., 267 Fed.Appx. 167, 170 (3rd Cir. 2008). This pattern can be established by showing "*heightened scrutiny, negative criticism, differential treatment or violation of standard internal protocol and procedures*." Taylor, 11-4521-TCB-RGV at *98 (emphasis added); *see also, e.g.,* Simmons v. Camden Cty. Bd. Of Educ., 757 F.2d 1187, 1189 (11th Cir. 1985) (evidence supported inference of causal connection where employer indicated displeasure re protected conduct).

### B. Joyner produced evidence that the City retaliated against him

Joyner produced evidence bridging the temporal gap between his reporting discrimination in 2008 and the City refusing to promote him in 2014**.** On February 12, 2008, Joyner met with Finley to discuss perceived racial discrimination in Zone 3. (ECF 131-4, Finley Dep. 22:17-23; ECF 131-6, Joyner Dep. at 78:9-10, 146:10-152:16, 149:15-17, 156:10-12). Two days later, Finley requested that Joyner start an investigation and send any documentation directly to Finley. (ECF 131-4, Finley Dep. 24:8-13). Instead, on February 18, 2008, Joyner requested in writing that the complaint of racial discrimination be forwarded to Office of Professional Standards (OPS) *as required by City Policy*. (ECF 131-6, Joyner Dep. 165:8-166:27). By reporting racial discrimination, Joyner engaged in protected conduct. *See* <u>McCann</u>, 526 F.3d at 1376.

### i. The City retaliates: a pattern of antagonism and a failure to promote

Joyner produced evidence that he was subject to a pattern of antagonism following his reporting of discrimination. **First,** Finley expressed so much anger when Joyner told him of discrimination allegations that "[Joyner] felt like [Finley] was about to hit [him]"–Finley even screamed something like, "why are you doing this?" (ECF 131-6, Joyner Dep.152:3-4, 156:13-159:11, 166:5-14; ECF 131-5, Finley Ex 1). **Second,** *within fourteen days* of Joyner initiating an OPS investigation, Finley changed Joyner's schedule, ordering Joyner's transfer from Criminal Investigations Day Watch to *Patrol Night Watch*. (ECF 131-4, Finley

Dep. 11:21-12:5, 25:23- 26:13; ECF 131-5, Ex 1; ECF 131-6, Joyner Dep.167:20-169:10, 171:16-172:3). The City's abrupt change in Joyner's schedule after Joyner made the complaint creates a reasonable inference that the City responded to an employment situation different from ordinary policy. As a result of Finley's behavior, Joyner wanted to get out of Finley's chain of command and filed an internal grievance against Finley with Deputy Chief Anderson. (ECF 131-4, Finley Dep. 26:19-27:2; ECF 131-6, Joyner Dep. 169:13-16, 171:4-172:24, 175:1-3, 176:3-24). Joyner's request to be transferred out of Finley's command in Zone 3 was granted by Anderson, who said his grievance about Finley's act of transferring Joyner to Night Watch was a "**slam dunk**" because that schedule change ***never should have happened***. (ECF 131-6, Joyner Dep. 171:4-172:24, 174:24- 175:7).

**Third,** after Joyner filed a complaint against Finley, Lt. Lyle (present when Joyner brought the discrimination complaints to Finley on February 12, 2008), told Joyner, "Finley will never forget this…You'll never get out of this situation." (ECF 131-6, Joyner Dep. 97:10-19, 158:16-159:1, 182:12-5). The lower court dismissed this statement entirely as hearsay and not probative of causation. (ECF 140, p. 30, n. 7.) The lower court was incorrect to do this because Appellees did not object to this evidence pursuant to Rule 56(c)(2). Furthermore, the evidence that a plaintiff produces at the summary judgment stage need not be admissible under the Federal Rules of Evidence, only reducible to admissible form.

McMillian v. Johnson, 88 F.3d 1573, 1584 (11th Cir.1996) aff'd sub nom.
McMillian v. Monroe Cnty., Ala., 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1
(1997) (stating, "[w]e read this statement as simply allowing *otherwise admissible*
evidence to be submitted in *inadmissible form* at the summary judgment stage,
though at trial it must be submitted in admissible form." (emphasis in original)).
The lower court also failed to appreciate the implications of Lyle's statement in
the light most favorable to Mr. Joyner. *See* Tolan v. Cotton, 572 U.S. 650, 660
(2014). Lt. Lyle's statement indicates that Finley had a reputation for acting
against subordinate officers based on retaliation and not on his official, stated
reasons. *Id.* Indeed, at trial, Mr. Joyner could call Lt. Lyle as a witness not only to
describe Finley's conduct in the meeting when Joyner reported discrimination, but
also to describe Finley's reputation for untruthfulness: admissible impeachment
evidence. *See* Fed. R. Evid. 608.

**Fourth,** the City has failed to promote Joyner since 2007, (Turner 30(b)(6)
Dep. at 16:13-16), despite the fact that he had formerly been on a promotional
track and had accrued numerous commendations, (ECF 131-6, Joyner Dep.
28:22-29:2, 32:20-22, 36:1-2). Thirteen of the sixty-three people who ranked
lower than Joyner on the list of officers qualified to be Lieutenants were promoted
to the higher ranks of Captain or Major. (ECF 131-6, Joyner Dep. Def. Ex. 5.)
Further, Joyner had been promoted three times in six years; but following his

racial discrimination complaint, the promotions stopped. (*See* ECF 131-6, Joyner Dep. 28:22-29:2, 32:20-22, 36:1-2).

Finley's unfavorable reactions after Joyner made the discrimination complaint show that Finley was at the very least *displeased* with Joyner's decision to engage in that protected conduct. *See* <u>Simmons</u>, 757 F.2d at 1189. These facts create a reasonable inference of causation between Joyner's 2008 discrimination complaint and the City purposely excluding Joyner from further promotions, including his failure to be appointed in 2015. *See* <u>Stanley v. City of Dalton</u>, 219 F. 3d 1280, 1282 (11th Cir. 2000).

### ii. A reasonable inference: Turner knew Joyner complained about race

The lower court accepted Appellees' argument that Joyner cannot prove retaliation because Turner, the decisionmaker, *testified* that he did not know that Joyner complained about discrimination. *But Turner's self-serving testimony cannot prevent the proper persons from weighing the credibility of that testimony*: *a jury*. *See* <u>Ave. CLO</u>, 723 F.3d at 1293; <u>Celotex</u>, 477 U.S. at 324. Furthermore, Chief Turner could have found out about Joyner's report from OPS, Lt. Lyle, or a number of other sources. Moreover, the facts demonstrate that Finley knew Joyner's complaint about discrimination should have been forwarded to OPS. (ECF 131-4, Finley Dep. at 24:21-25:3 (stating, "[the complaint] should have been forwarded to OPS right away, so that was a mistake on my part. [Joyner] did the

right thing on that.")) Instead, Finley told Joyner to go against City Policy and report everything to Finley. (ECF 131-4, Finley Dep. 24:8-13, ECF 131-5, Ex 14). Finley was obviously attempting to "keep it quiet" on behalf of Chief Turner—the sole decisionmaker for promotions to Captain and *the person responsible for additional, ongoing racial discrimination throughout the APD*. (*See* ECF 131, Plf's Response, p. 1-2, 5-14); (ECF 140, R & R, p. 8-9, 21-25.) As a result of his loyalty, Finley was promoted to Deputy Chief in 2010, becoming the third-highest ranking officer in the Atlanta Police Department, while Joyner was punished and remained a Lieutenant. (ECF 131-4, Finley Dep. 28:21-34:2, 37:8-20, ECF 131-5, Ex. 2 to Finley Dep.); (ECF 131-9, Turner 30(b)(6) Dep. 8:20-25); (ECF 131-6, Joyner Dep. 173:1-2).

It is a reasonable inference that Turner knew about Joyner's complaint of discrimination, and Mr. Joyner produced sufficient evidence to defeat summary judgment on his Title VII retaliation claim.

## VII.   No lawful reason to deny Mr. Joyner's motion to amend the pleading to conform to the evidence regarding the addition of a Section 1981 race-discrimination case.

To the point, while granting Mr. Joyner's Motion to amend the pleading, so that he could add an equal protection claim, the trial court denied Mr. Joyner's motion to amend the pleading to add a Section 1981 claim. (*See* ECF 317-3, Trial Tr. 18:13-19:16 (Mar. 23, 2022.)) The trial court erred because the same direct

evidence that supports Mr. Joyner's equal protection claim, definitely supported his Section 1981 claims. By law, "[w]hen a plaintiff proves a case of discrimination by **direct evidence**, application of McDonnell Douglas is inappropriate." <u>Jefferson v. Sewon Am., Inc.</u>, 891 F.3d 911, 922 (11th Cir. 2018). That established, to save this court's time, Plaintiff relies on the live, direct testimony of Chief Turner in which he admits to, *inter alia*, reserving a certain number of seats for one race, to the exclusion of all other races, and admits to excluding white people from being considered for the Zone 2 Captain position in question—as direct evidence that supports a Section 1981 claim of race discrimination. (See Statement of Case, *infra*, Section (ii) A-E, for Turner's testimonial admissions). Relevantly, and again, "[b]ecause Section 1981 is designed to protect "all persons," the Supreme Court has determined that it is applicable to race-based employment discrimination claims brought by plaintiffs of all races, including Caucasians." <u>Sullivan v. Newburgh Enlarged Sch. Dist.</u>, 281 F. Supp. 2d 689, 708 (S.D.N.Y. 2003).

## <u>CONCLUSION</u>

For the reasons cited above, Mr. Joyner request the relief sought in his Appellant Brief and relief this Honorable Court deems fit as a matter of law.

Dated: January 19, 2023

/s/ Mario B. Williams
Mario B. Williams
Ga. Bar No. 235254

**HDR LLC**
44 Broad Street NW, Suite 200
Atlanta, GA 30303
Tel: (404) 254-0442
mwilliams@hdrattorneys.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,**
**TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

*Check the appropriate box in section 1, and check the box in section 2.*

**1.    Type-Volume**

☑    This document complies with the word limit of FRAP     32(a)(7)(B)
because, excluding the parts of the document exempted by FRAP 32(f) and
    32(a)(7)(B)(iii)     , this document contains
    12, 725     words.

    **or**

☐    This brief complies with the line limit of FRAP    [insert Rule citation]    because,
excluding the parts of the brief exempted by FRAP 32(f) and
    [insert applicable Rule citation, if any]    , this brief uses a monospaced
typeface and  contains    [state the number of]    lines of text.

**2.    Typeface and Type-Style**

☑    This document complies with the typeface requirements of FRAP 32(a)(5) and the
type-style requirements of FRAP 32(a)(6).

(s)___Mario B. Williams_____

Attorney for ___Appellant_____

Dated: ___1/19/2023_____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 19, 2023, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the appellant CM/ECF system.

This document has been filed using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Dated: January 19, 2023

Respectfully submitted,

/s/ Mario B. Williams
Mario B. Williams

**HDR LLC**
44 Broad Street NW, Suite 200
Atlanta, GA 30303
Tel: (404) 254-0442
mwilliams@hdrattorneys.com
*Counsel for Appellant*